UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

| UNITED STATES, | : | |
| | : | Case No. 1:19-cr-00786-JG |
| Plaintiff, | : | |
| | : | |
| vs. | : | OPINION & ORDER |
| | : | [Resolving Docs. 25, 43] |
| AKEEM FARROW, *et al.*, | : | |
| | : | |
| Defendant. | : | |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On December 18, 2019, a grand jury indicted Akeem Farrow and Denzell Russel for being felons in possession of firearms and ammunition, 18 U.S.C. §§ 922(g)(1), 924(a)(2).[1] In January 2020, Defendants moved to suppress evidence that the Government seized during the traffic stop that led to their indictment.[2] The Government opposed.[3]

On February 19 and 21, 2020, the Court held an evidentiary hearing on the motions.[4] For the following reasons, the Court **DENIES** the motions to suppress evidence.

I. Background[5]

On August 6, 2019, an East Cleveland double shooting resulted in a death and an injury. After the murder and shooting, East Cleveland police "were basically doing extra patrol." East Cleveland police were on high alert because they "had been getting alerts that something along the lines of retaliation was going to happen . . . we were getting alerts that some type of retaliation was going to happen . . . "

On August 7, 2019, East Cleveland Patrolmen Tyler McClamroch and Nicole Link

---

[1] Doc. 1.
[2] Doc. 25; Doc. 43.
[3] Doc. 33; Doc. 47.
[4] Doc. 52; Doc. 54.
[5] The facts in this section are drawn from testimony at the suppression hearing.

patrolled East Cleveland. They patrolled an area near a location where a vigil was scheduled for the shooting victims.

Around 9:00 p.m., Patrolmen McClamroch and Link saw a car with three occupants proceeding slowly, about 5 to 10 miles an hour, near the vigil area. The car had only one working brake light. When the car turned right on Superior Avenue, the driver failed to signal.

Patrolmen McClamroch and Link pulled the car over due to the faulty brake light and the failure to signal.

Patrolman Link approached the driver's side of the car; Patrolman McClamroch approached the passenger's side.

Upon approaching the car, Patrolman Link looked into the backseat, where Anthony Coleman was sitting. Patrolman Link observed an opened bottle of tequila on the seat next to Coleman. Link asked Coleman about the bottle.

In response, Coleman raised the bottle, shook it, and said, "It's empty."[6] Despite the claim that the tequila bottle was empty,[7] Patrolmen Link and McClamroch's body camera videos show that the bottle contained a small amount of liquid. Patrolman Link testified that Anthony Coleman admitted "we've been drinking." Coleman denied making this statement.

Patrolmen Link, McClamroch, and newly arrived police officers removed the three car occupants from the car: the backseat passenger, Coleman; the driver, Defendant Akeem

---

[6] Both Deputy Link and Coleman's account of this interaction differed from the video evidence. Deputy Link testified that Coleman said "Yeah, we've been drinking. That's all he said." Coleman testified that he told Link that the bottle was two or three days old. Neither account is wholly supported by the video.
[7] In addition to Coleman's statement on the video, he testified that the bottle was empty.

Farrow; and the front seat passenger, Defendant Denzell Russell.

The police officers frisked each occupant before detaining them in squad cars. Patrolman Link testified that the car occupants were frisked for officer safety in reaction to the tensions associated with the recent shooting. The East Cleveland police removed the car occupants to ensure officer safety during the vehicle search.

Officer McClamroch frisked Anthony Coleman, and Coleman admitted to possessing a small amount of marijuana.

The police searched the car. During the search, officers found two guns and two body armor vests.

II. Discussion

The Court will address whether (1) police had reasonable suspicion to frisk the car's occupants; (2) police had violated the Fourth Amendment by searching the car; and whether (3) Defendant Russell has standing to challenge the search.[8]

### A. Police Had Reasonable Suspicion to Frisk the Car Occupants.

The parties agree that the police lawfully stopped Defendant Farrow's car. After police lawfully stop a vehicle for a traffic violation, "the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."[9]

The relevant question is whether the police had reasonable suspicion to frisk the car

---

[8] The Government does not argue that Coleman's marijuana was a basis for the probable cause.
[9] *Arizona v. Johnson*, 555 U.S. 323, 331 (2009) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977)).

Case No. 1:19-cr-00786-JG
Gwin, J.

occupants.[10]

Lawful stops do not necessarily carry with them the authority to conduct a *Terry* frisk.[11]  Instead, the officer must have a reasonable suspicion that the individual to be searched may be armed and dangerous."[12]  The "reasonable suspicion" standard for a *Terry* frisk requires a lower showing than probable cause: "the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."[13]

Here, Deputy Link testified that a murder and a shooting occurred in East Cleveland the day before the traffic stop.  She testified that East Cleveland police received cautions that retaliation was planned.  Accordingly, she and Deputy McClamroch were on "high alert" for retaliatory shootings.  She testified that she was stationed near a shooting victim vigil location.

Patrolman Link observed Defendant Farrow's car drive slowly near the vigil area.  Once Defendant Farrow's car observed her police car, it inexplicitly accelerated to the speed limit.

Under these circumstances, the police had reasonable suspicion that the vehicle occupants presented a threat.

### B.  Police Did Not Violate the Fourth Amendment by Searching the Car.

The Court next considers the police officers' warrantless search of the car.

---

[10] *See United States v. Campbell*, 549 F.3d 364, 372 (6th Cir. 2008) ("The key issue in the present case, however, is whether [the officer] exceeded the permissible scope of the initial stop by removing [the defendant] from the car and conducting a patdown.").
[11] *Id.*
[12] *Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009); *see also United States v. Tillman*, 543 F. App'x 557, 560 (6th Cir. 2013).
[13] *Tillman*, 543 F. App'x at 560 (quotation omitted); *accord Campbell*, 549 F.3d at 372 (same).

Case No. 1:19-cr-00786-JG
Gwin, J.

1. **Police Had Probable Cause to Search the Car Under the Fourth Amendment Automobile Exception.**

In general, the Fourth Amendment does not require that police obtain a warrant to search an automobile when they have probable cause to believe it contains contraband or evidence of criminal activity.[14] Probable cause to search exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[15] Probable cause must be assessed by looking to the "totality-of-the-circumstances."[16]

Here, the Government says Patrolman Link saw evidence of a crime in plain view— the opened liquor bottle. Ohio Revised Code Section 4301.62(B)(4) states that "no person shall have an opened container of beer or intoxicating liquor while operating or being a passenger in or on a motor vehicle on any street, highway, or other public or private property open to the public for purposes of vehicular travel or parking."

Accordingly, the opened liquor bottle was contraband. The Government says the police had probable cause to search the car because there was a fair probability that a search could reveal further contraband, i.e., other opened containers.

The Government's argument is bolstered by *United States v. Howton*.[17] In that case,

---

[14] *Arizona v. Gant*, 556 U.S. 332, 347 (2009) ("If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798, 820–821 (1982), authorizes a search of any area of the vehicle in which the evidence might be found."); *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012) ("Under the automobile exception to the warrant requirement, an officer may perform a warrantless search of a detained vehicle should the officer have probable cause to believe the vehicle contains contraband or evidence of criminal activity."); *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir.1998) ("[A]n officer may search a readily mobile vehicle without a warrant if he has probable cause to believe that the vehicle contains evidence of a crime.").
[15] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).
[16] *Id.* at 230.
[17] *United States v. Howton*, 260 F. App'x 813 (6th Cir. 2008).

Case No. 1:19-cr-00786-JG
Gwin, J.

a Kansas state trooper stopped a van for drifting over the right lane onto the shoulder.[18] When the trooper approached the van, the trooper observed an open beer can in the dashboard cup holder, that violated Kansas state law.[19]

The *Howton* driver refused to consent to a search.[20] The trooper nonetheless searched the van for any other open containers of alcohol.[21] The district court denied Howton's motion to suppress,[22] and the Sixth Circuit affirmed: "[After] discover[ing] that at least one passenger in the van had violated [Kansas's opened container law,] . . . [t]he troopers then had probable cause to search for any other similar contraband, i.e., any open containers of alcohol being transported in the vehicle in violation of state law."[23]

In view of *Howton*, the Court holds that Patrolman Link had probable cause to search Defendant Farrow's car because there was a fair probability that a search would reveal further evidence of criminal activity—namely, other opened containers.

Defendants' arguments in opposition are unpersuasive. Most forcefully, Defendants argue that there was no evidence of a crime because the liquor bottle was empty.

The Court disagrees. There is enough evidence to conclude that the bottle was not empty. The Court credits Deputy Link's testimony that the bottle contained liquid. And, more importantly, the police body camera videos—though not completely clear—seem to show that the bottle contained liquid.

---

[18] *Id.* at 814.
[19] *Id.*.
[20] *Id.* at 815.
[21] *Id.*
[22] *Id.*
[23] *Id.* at 817 (citing *United States v. McGuire,* 957 F.2d 310, 314 (7th Cir.1992) ("Once Trooper Newman discovered that McGuire was transporting open, alcoholic liquor in violation of Illinois law, ... he had probable cause to believe that the car contained additional contraband or evidence," which "gave Newman the authority to search every part of the vehicle and its contents that could conceal additional contraband.")).

Case No. 1:19-cr-00786-JG
Gwin, J.

Defendants' further arguments that the bottle (1) had been opened two to three days before and (2) was surrounded by trash are likewise unpersuasive. Ohio Revised Code Section 4301.62(B)(4) does not distinguish between recently opened containers versus older opened containers. The statute also does not say that opened containers are fine as long as they are among trash. An older opened container surrounded by trash is still illegal.

Given the totality of the circumstances, the police had probable cause to search the car for other opened containers.

### 2. Police Could Perform a Permissible Protective Search of the Car Under *Michigan v. Long*.

Separately, Patrolmen Link and McClamroch could search the vehicle for reasons related to their authority to conduct a *Terry* pat-down.[24]

The vehicle search was a permissible protective search under *Michigan v. Long*.[25] During a *Terry* stop, *Long* allows officers to search an automobile's passenger compartment for weapons if the officers have a reasonable belief "based on 'specific and articulable facts' " that the suspect may be dangerous and could "gain immediate control of weapons."[26] This rule recognizes that "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers."[27]

Here, Patrolmen Link and McClamroch had received information that a retaliatory shooting could occur near the location they stopped Defendants. Defendants drove at strange speeds and then sped up as police approached. Against the backdrops of the day-

---

[24] *Terry v. Ohio*, 392 U.S. 1, 5 (1968).
[25] 463 U.S. 1032, 1049–50 (1983); *see also United States v. Lambert*, 770 Fed. Appx. 737 (2019).
[26] *Long*, 463 U.S. at 1049.
[27] *Id.* at 1047; *accord United States v. Lurry*, 483 Fed. Appx. 252 (2012).

-7-

before killing and shooting, Patrolmen Link and McClamroch could believe Defendants were armed and dangerous.

Patrolmen Link and McClamroch did not originally arrest Coleman for the alcohol violation. Instead, they issued him a citation. But defendants who are not under arrest could regain access to the vehicle and any weapon within the vehicle. *See Arizona v. Gant*, 556 U.S. 332, 352 (2009) (Scalia, J., concurring) ("In the no-arrest case, the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is completed.").

Both at the time the Defendants left the vehicle and at the time the Defendants were outside the vehicle, the police officers could reasonably believe the Defendants might have arms in the vehicle. Under *Long*, the vehicle search was permissible.

Given their reasonable belief that the vehicle might include weapons that the Defendants would return to if not arrested, the police could search the vehicle.

In summary, the police did not violate the Fourth Amendment by searching the car.

### C. Even If There Was Not Probable Cause for a Search, Defendant Russell Lacks Standing to Challenge the Car Search.

Fourth Amendment rights are considered "personal rights," and they cannot be vicariously asserted.[28] This means that a defendant seeking to suppress evidence "must demonstrate that he or she personally has an expectation of privacy in the place searched, and that the expectation is reasonable."[29]

The Sixth Circuit has repeatedly held that a passenger with no possessory interest in

---

[28] *United States v. Noble*, 762 F.3d 509, 526 (6th Cir. 2014) (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969)).
[29] *Id.* (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)).

a stopped vehicle lacks a Fourth Amendment privacy interest to challenge the validity of a subsequent search of that vehicle.[30]

Here, front seat passenger Denzell Russell does not claim to have any property or possessory interest in the relevant car. Thus, even if the police would have violated the Fourth Amendment in searching the car, Russell would lack standing to challenge the search.

## ORDER

For the foregoing reasons, Defendants' motions to suppress evidence are **DENIED**.


IT IS SO ORDERED.

Dated: February 26, 2020         *s/       James S. Gwin*
                                 JAMES S. GWIN
                                 UNITED STATES DISTRICT JUDGE

---

[30] *See, e.g., United States v. Bah*, 794 F.3d 617, 626 (6th Cir. 2015) (holding that the defendant did not have standing to directly contest the legality of the vehicle search on Fourth Amendment privacy grounds because he had no possessory interest as a passenger in a rental vehicle); *United States v. Torres-Ramos*, 536 F.3d 542, 549 (6th Cir. 2008) ("We agree that *Rakas* controls this particular issue and that the defendants did not have a reasonable expectation of privacy [as passengers] in the van."); *United States v. Ellis*, 497 F.3d 606, 612 (6th Cir. 2007) (recognizing that "a passenger does not have a legitimate expectation of privacy in the searched vehicle").